UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

|  |  |
|---|---|
| In re:<br><br>INOFIN, INCORPORATED,<br><br>Debtor. | )<br>)<br>)   Chapter 7<br>)<br>)   Case No. 11-11010-JNF<br>)<br>) |

MOTION BY RAYMOND C. GREEN, INC. FOR RELIEF
FROM THE AUTOMATIC STAY AND FOR RELATED RELIEF

Pursuant to Sections 362(d)(1) and (d)(2) of the Bankruptcy Code, Federal Rule of Bankruptcy Procedure 4001, and MLBR 4001-1, Raymond C. Green, Inc. ("RCG") moves this Court for an order lifting the automatic stay to permit RCG to obtain its property from Inofin, Inc. (the "Debtor"). The Debtor's primary business is providing car loans to individuals (the "Consumer Borrowers") with poor credit. Prior to the entry of the order for relief against the Debtor, RCG held liens against a portion of the Debtor's car loan portfolio (the "RCG Portfolio") to secure a claim against the Debtor in excess of $8,000,000. Also prior to the Petition Date, RCG scheduled and conducted a foreclose sale of the RCG Portfolio under the Massachusetts Uniform Commercial Code. RCG was the successful bidder at the foreclosure sale and therefore became the owner of the RCG Portfolio prior to the Petition Date.[1]

Mark DeGiacomo (the "Trustee"), the Chapter 7 trustee for the Debtor, is collecting the amounts paid by the Consumer Borrowers with respect to the RCG Portfolio and is in possession of books, records and data (collectively the "Records") relating to the RCG Portfolio. The proceeds of the RCG Portfolio and the Records are the property of RCG. RCG is entitled to

---

[1] Since the RCG Portfolio is not property of the Debtor's bankruptcy estate, RCG does not concede that it is subject to the automatic stay, but nevertheless seeks the relief set forth in this motion out of an overabundance of caution.

relief from the automatic stay because, among other things, the Debtor's bankruptcy estate no longer has any interest in the RCG Portfolio, its proceeds or the Records.

In further support of this motion, RCG avers as follows:

### BACKGROUND

1. On February 9, 2011 (the "Petition Date"), various unsecured creditors filed an involuntary Chapter 7 bankruptcy petition against the Debtor. On February 16, 2011, the Court entered an order for relief against the Debtor.

2. Prior to the Petition Date, the Debtor was engaged in the business of providing sub-prime financing to consumers, many of whom did not otherwise meet the underwriting criteria for other institutional lenders, for the purchase of used motor vehicles.

**A.    The RCG Loans.**

3. For years prior to the Petition Date, RCG provided financing to the Debtor that the Debtor used to make loans to Consumer Borrowers. To secure the amounts owed to RCG, the Debtor executed a security agreement (the "Security Agreement") granting RCG a lien against, among other things, all chattel paper, instruments and motor vehicle installment sales contracts purchased by the Debtor with the proceeds of loans from RCG, all collateral security for and all guaranties of and all proceeds of any of the foregoing, and all documents, books and records relating to the foregoing. A copy of the security agreement is attached as Exhibit A.[2] RCG's lien in the RCG Portfolio was perfected in two ways. First, RCG took possession of the original chattel papers and/or instruments evidencing the loans to the Consumer Borrowers as well as the titles to the vehicles financed. *See* M.G.L. c. 106 §9-313. Second, RCG filed various

---

[2] At the time it executed the Security Agreement, the Debtor's name was First Investors Factoring, Inc. The Debtor changed its name to "Inofin, Incorporated" after executing the Security Agreement.

2

UCC-1 financing statements, most recently in April of 2006.  *See* M.G.L. c. 106 §9-312.  A copy of the April, 2006 UCC-1 financing statement is attached as Exhibit B.

4. On or about April 18, 2008, the Debtor executed a promissory note (the "First 2008 Note") in the amount of $400,000.  The proceeds of the First 2008 Note were used by the Debtor to make loans to Consumer Borrowers.  The First 2008 Note provided that the amounts loaned were subject to the Security Agreement.  A copy of the First 2008 Note is attached as Exhibit C.  Upon making loans to Consumer Buyers with the proceeds of the First 2008 Note, the Debtor delivered to RCG the original instruments, chattel paper and underlying vehicle titles associated with such loans.

5. On or about May 2, 2008, the Debtor and RCG entered into a loan agreement (the " 2008 Loan Agreement") that provided, among other things, that RCG would make a line of credit available to the Debtor in a principal amount of not more than $7,000,000.  The proceeds of the 2008 line of credit were to be used solely to make car loans secured by the chattel paper and/or instruments evidencing the car loans.  The 2008 Loan Agreement provided that loans made under the line of credit were subject to the Security Agreement and that the Debtor would deliver to RCG possession of the chattel paper and/or instruments evidencing the loans.  In conjunction with the execution of the 2008 Loan Agreement, the Debtor executed a promissory note in the amount of $7,000,000 (the "Second 2008 Note").  Copies of the 2008 Loan Agreement and the Second 2008 Note are attached as Exhibit D.  Upon making loans to Consumer Buyers with the proceeds of the Second 2008 Note, the Debtor delivered to RCG the original instruments, chattel paper and underlying vehicle titles associated with such loans.

6. On or about August 21, 2009, the Debtor and RCG entered into a loan agreement (the " 2009 Loan Agreement") that provided, among other things, that RCG would make a line

3

of credit available to the Debtor in a principal amount of not more than $8,000,000. The proceeds of the 2009 line of credit were to be used solely to make car loans secured by the chattel paper and/or instruments evidencing the car loans. The 2009 Loan Agreement provided that loans made under the line of credit were subject to the Security Agreement and that the Debtor would deliver to RCG possession of the chattel paper and/or instruments evidencing the loans. In conjunction with the execution of the 2009 Loan Agreement, the Debtor executed a promissory note in the amount of $8,000,000 (the "2009 Note"). Copies of the 2009 Loan Agreement and the 2009 Note are attached as <u>Exhibit E</u>. Upon making loans to Consumer Buyers with the proceeds of the 2009 Note, the Debtor delivered to RCG the original instruments, chattel paper and underlying vehicle titles associated with such loans.

7. On or about January 8, 2010, the Debtor executed a promissory note (the "2010 Note") in the amount of $200,000. The proceeds of the 2010 Note were used by the Debtor to make loans to end loan car buyers. The 2010 Note provided that the amounts loaned were subject to the Security Agreement. A copy of the 2010 Note is attached as <u>Exhibit F</u>. Upon making loans to Consumer Buyers with the proceeds of the 2010 Note, the Debtor delivered to RCG the original instruments, chattel paper and underlying vehicle titles associated with such loans.

8. On or about October 1, 2010, as a result of an investigation into the Debtor's conduct by the U.S. Securities and Exchange Commission, the Debtor and RCG entered into a loan modification agreement (the "2010 Loan Modification") with respect to the 2008 Loan Agreement and the 2009 Loan Agreement. The 2010 Loan Modification, among other things: (a) for a reduction in the interest rate on the Second 2008 Note and the 2009 Note, (b) that the Debtor could make payments of interest only under the Second 2008 Note and the 2009 Note

4

until June 1, 2011, (c) for an extension of the maturity dates of the Second 2008 Note and the 2009 Note to June 1, 2011, (d) that the Debtor would pledge installment contracts to RCG sufficient to maintain the value of the RCG Portfolio at the greater of (i) $10,000,000 or (ii) 125% of the outstanding principal balance of RCG's loans to the Debtor.  A copy of the 2010 Loan Modification is attached as Exhibit G.

9. At all times relevant to this motion, RCG was in possession of the original instruments, chattel paper and/or underlying vehicle titles with respect to the Consumer Buyer loans in the RCG Portfolio.[3]

10. Attached as Exhibit H is a list of the RCG Portfolio as of the Foreclosure Date (as defined below).

**B.    The Foreclosure.**

11. As a result of defaults by the Debtor and pursuant to Section 9-610 of the Massachusetts Uniform Commercial Code, RCG scheduled and conducted two foreclosure sales of the RCG Portfolio on January 18, 2011 and January 26, 2011 (the "Foreclosure Date").[4]  At each of the foreclosure sales, RCG was the high bidder for the RCG Portfolio.  Pursuant to applicable Massachusetts law, RCG became the owner of the RCG Portfolio at the foreclosure sales.  See M.G.L. c. 106 § 9-617.

12. As of the Foreclosure Date, the outstanding balance due and owing to RCG was approximately $8,176,661.40, exclusive of attorneys' fees and costs, consisting of the following:

    a.    Balance due on the First 2008 Note – $45,578.39;

---

[3] In the normal course of its pre-foreclosure relationship with the Debtor, RCG returned installment contracts and/or vehicle titles to the Debtor, among other times, when: (a) the underlying loans were satisfied by Consumer Borrowers, and (b) when Consumer Borrowers defaulted and the vehicles that were the subject of the defaulted loan were repossessed.

[4] The second foreclosure sale was scheduled because one creditor who apparently has a secured claim against the Debtor did not receive notice of the first scheduled foreclosure sale.  The Debtor received notice of both foreclosure sales.

5

      b.      Balance due on the Second 2008 Note – $1,970,339.15;

      c.      Balance due on the 2009 Note – $6,019,257.59;

      d.      Balance due on the 2010 Note – $141,486.27.

13.    As of the Foreclosure Date, RCG does not believe that there were any other valid encumbrances against the RCG Portfolio.  At all times relevant to this motion, RCG was the original holder of the obligations secured by the RCG Portfolio.  As of the Foreclosure Date, RCG's claims against the Debtor were not secured by any other property.

### RELIEF REQUESTED

14.    Section 362(d)(1) and (d)(2) of the Bankruptcy Code provides as follows:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
> (2) with respect to a stay of an act against property under subsection (a) of this section if –
>
>     (A)    the debtor does not have an equity in such property; and
>     (B)    such property is not necessary to an effective reorganization

**A.    RCG is Entitled to Relief From The Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1).**

15.    On the Foreclosure Date, RCG became the owner of the RCG Portfolio by the operation of applicable Massachusetts law.  *See* M.G.L. c. 106 § 9-617.  On the Foreclosure Date, any right of redemption the Debtor may have held with respect to the RCG Portfolio was terminated by RCG's foreclosure sales.  *See* M.G.L. c. 106 § 9-623.  Because the Debtor had no interest in the RCG Portfolio on the Petition Date, the RCG Portfolio did not become property of the Debtor's bankruptcy estate (the "Estate").

16. RCG is entitled to relief from the automatic stay for cause, and to possession of the proceeds of the RCG Portfolio and the Records, because the proceeds of the RCG Portfolio and the Records are not property of the Estate and the Estate has no interest in such property.

17. Even if the Debtor's bankruptcy estate did have an interest in the RCG Portfolio, RCG would still be entitled to relief from the automatic stay because the Trustee is unable to adequately protect RCG's interest in the RCG Portfolio.

18. Although the Trustee is operating the Debtor's business, he is not generating new loans to replace those collected. Every dollar of proceeds spent by the Trustee is not replaced. Every dollar of the proceeds of the RCG Portfolio that is not paid to RCG therefore irreplaceably diminishes RCG's interest in the RCG Portfolio. In this circumstance, the Trustee cannot provide adequate protection to RCG, and relief from the automatic stay for cause is therefore appropriate.

**B.     RCG is Entitled to Relief From the Automatic Stay Pursuant to 11 U.S.C. § 362(d)(2).**

19. Even if the Debtor's bankruptcy estate did have an interest in the RCG Portfolio, RCG would still be entitled to relief from the automatic stay on the grounds that there is no prospect for an effective reorganization.

20. The Debtor bears the burden of proof to establish the RCG Portfolio's necessity to an effective reorganization. *See* 11 U.S.C. § 362(g)(2). To do so, a debtor must show that there is "a reasonable possibility of a successful reorganization within a reasonable time" *United Savings Ass'n of Texas v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 375-76, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988)). "What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect*." *Timbers*, 484 U.S. at 375-76 (emphasis in original) (internal citation omitted).

7

21. The Debtor's bankruptcy is a Chapter 7 liquidation. No reorganization is possible, much less in prospect, and RCG is therefore entitled to relief from the automatic stay pursuant to Section 362(d)(2) of the Bankruptcy Code.

**WHEREFORE**, RCG respectfully requests that this Court enter an Order:

A. Finding that the automatic stay does not apply to RCG's rights with respect to the RCG Portfolio;

B. In the alternative, finding that RCG is entitled to relief from the automatic stay pursuant to Section 362(d)(2) of the Bankruptcy Code

C. Finding that RCG is entitled to possession of the RCG Portfolio, including, without limitation, all of the proceeds of the RCG Portfolio and all documents, books and records in the Trustee's possession that are associated with the RCG Portfolio;

D. Ordering that the stay pursuant to Bankruptcy Rule 4001(a)(3) is not applicable; and

E. Granting such other relief as this Court deems just and proper.

Respectfully submitted,

RAYMOND C. GREEN, INC.,

By its attorneys,

/s/ D. Ethan Jeffery
D. Ethan Jeffery (BBO #631941)
Christopher M. Condon (BBO #652430)
MURPHY & KING, Professional Corporation
One Beacon Street
Boston, MA 02108
Tel: (617) 423-0400
Email: dej@murphyking.com

Dated: March 9, 2011
589590

8