**EXHIBIT D TO**

**MOTION BY RAYMOND C. GREEN, INC. FOR RELIEF FROM THE AUTOMATIC STAY AND FOR RELATED RELIEF**

$7,000,000.00                                            Boston, Massachusetts
                                                         May 2, 2008

PROMISSORY NOTE

FOR VALUE RECEIVED, the undersigned ("Maker"), which term wherever used herein shall mean all and each of the signers of this note, jointly and severally, promise to pay to the order of Raymond C. Green, Inc. the sum of Seven Million ($7,000,000.00) Dollars, due and payable on May 2, 2010, together with interest on so much of such principal sum as has been advanced from time to time, at the rate of Thirteen (13%) percent per annum.

Payments of interest, in arrears, shall be due and payable weekly on Friday of each week commencing May 9, 2008. Each interest payment shall be accompanied by a principal payment equal to the sum of: (i) the amount advanced by the holder to the Maker for the purchase of each of the outstanding "Installment Contracts" collaterally assigned to the holder pursuant to Section 2 of the Loan Agreement of even date between the Maker and the holder amortized over the number of weeks equal to (x) the total number of weeks of payments remaining under the Installment Contracts, divided by (y) the number of Installment Contracts, multiplied by (z) seventy-five (75%) percent, plus (ii) any prepayment in full actually made by a Buyer under any such Installment Contract or the outstanding principal amount of any Installment Contract which is the subject of a repossession; provided, however, that no prepayment under this subsection (ii) shall be required if the outstanding principal balance under this Note is less than the then remaining outstanding principal balance under the remainder of the Installment Contracts. Principal payments shall be due whether nor not the "Buyer" under the Installment Contract makes any payment.

All principal and accrued unpaid interest shall, in all events, be due and payable on May 2, 2010. Payments shall be applied first to costs of collection, then to accrued interest and then to principal reduction. The Maker shall have no right to prepay this note, in whole or in part.

The Maker shall pay to the holder a late charge of three (3%) percent of any required payment not received by the holder within fifteen (15) days after the payment is due.

The Maker agrees to pay all costs and expenses, including all reasonable attorney fees, for the collection of this note upon default, and to pay interest on all amounts not paid when due (pursuant to the terms hereof, by acceleration, or otherwise) at the rate of twenty-four (24%) percent per annum (instead of the 13% rate set forth above), until paid in full. All advances hereunder shall be made by federal funds wire transfer and payments by automatic clearinghouse funds to the accounts designated by the Maker and holder.

At the option of the holder, this note shall become immediately due and payable without notice or demand upon the occurrence at any time of any of the following events: (1) Default in any payment of principal or interest which is not cured within seven (7) days; (2) Default, for more than 21 days after notice thereof from holder to Maker, no cure having been effected, in the

ID # 3771v10/6385-99

performance or observance of the terms or conditions of the Loan Agreement or other instruments and documents (including amendments and extensions thereof) securing this note; (3) Default for more than 21 days after notice thereof from holder to Maker, no cure having been effected, in the payment or performance of any other liability or obligation of the Maker to the holder; (4) Service, pursuant to trustee process, upon the holder hereof of a writ in which the holder is named as trustee of at least $10,000 of the Maker; (5) If the Maker is a corporation, trust or partnership, the liquidation, termination or dissolution of any such organization; or (6) If Maker shall make an assignment for benefit of creditors, or if a receiver of all or substantially all of Maker's property shall be appointed and not dismissed within 60 days, or if a petition in bankruptcy or other similar proceeding under any law for relief of debtors shall be filed by or against (if not dismissed or stayed within sixty (60) days in the event of an involuntary bankruptcy) Maker.

Maker hereby (1) waives presentment, demand, protest and notices of every kind and description, and all suretyship defenses and defenses in the nature thereof; (2) waives any defenses based upon, and specifically assents to, any and all extensions and postponements of the time of payment and all other indulgences and forbearances which may be granted by the holder to any party liable hereon; (3) agrees to any substitution, exchange, release, surrender or other delivery of any collateral held hereunder and to the addition or release of any other party or person primarily or secondarily liable; and (4) agrees to be bound by all the terms contained in this note and agrees that the obligations and agreements of all such parties shall be joint and several. No delay or omission on the part of the holder in exercising any right hereunder shall operate as a waiver of such right or of any other right of such holder, nor shall any delay, omission or waiver on any one occasion be deemed a bar to or waiver of the same or any other right on any future occasion.

No single or partial exercise of any power hereunder or under any mortgage or security agreement securing this note shall preclude other or future exercise thereof or the exercise of any other power. The holder hereof shall at all times have the right to proceed against any portion of the security held herefor in such order and in such manner as the holder may see fit, without waiving any rights with respect to any other security.

Subject to applicable grace periods, all times of payment of principal, interest or any other monies due under or in respect to this note or under or in respect to any mortgage, security agreement or other instrument or agreement securing this note shall be of the strict essence.

If any term or provision of this note, or any portion of any such term or provision, shall be held invalid or against public policy, or if the application of the same to any person or circumstance is held invalid or against public policy, then, the remainder of this note (or the remainder of such term or provision) and the application thereof to other persons or circumstances shall not be affected thereby and shall remain valid and in full force and effect to the fullest extent permitted by law. No stockholder, director, officer or employee of the holder shall have any personal liability to Maker.

-2-

      All rights and obligations hereunder shall be governed by the laws of the Commonwealth of Massachusetts and this note is executed as and shall have the effect of a sealed instrument. Notwithstanding any provision herein or in any instrument now or hereafter securing this note, the total liability for payments in the nature of interest shall not exceed the limitations now imposed by the applicable laws of the state whose laws are controlling on the subject as shall be determined by final order of a court of competent jurisdiction. The Maker hereby submits to the jurisdiction of the courts of the Commonwealth of Massachusetts for all matters in connection herewith as well as for all purposes in connection with any other relationship between the undersigned and the Lender.

Signed in the presence of:                              INOFIN INCORPORATED

                                                          By: _____
                                                              Michael J. Cuomo, President

Secured by a Security Agreement dated April 17, 1996.

#11955

## FIRST AMENDMENT TO PROMISSORY NOTE

Reference is made to a Promissory Note (the "Note") in the original principal amount of $7,000,000.00 dated May 2, 2008, from Inofin Incorporated ("Maker") to Raymond C. Green, Inc. ("Holder")

The undersigned, being the Maker and Holder of the Note, do hereby amend the Note, effective as of the date hereof, as follows:

1. The maturity date of the Note is extended to June 1, 2011.

2. The non-default interest rate is temporarily lowered from 13% per annum to 8% per annum during the pendency of the Investigation (as defined in the Loan Modification Agreement ("LMA") dated as of October 1, 2010 between the Maker and Holder). The default interest rate shall remain at 24% per annum.

3. During the pendency of the Investigation, the second paragraph of the Note is temporarily deleted in its entirety and the following paragraph is substituted therefore:

"Payment of interest only, in arrears, shall be due and payable weekly on Friday of each week commencing October 8, 2010. This Note shall be secured as set forth in the LMA."

4. The sixth paragraph of the Note is amended by adding the following new defaults:

"(7) If the aggregate outstanding principal balances of the Installment falls below the amount required in the LMA or any other default occurs under the LMA; or (8) if any lawsuit or enforcement action is filed against the Maker by any government agency or lender, which lawsuit or enforcement action alleges that the Maker's method of raising money and/or doing business violates federal or state law."

In all other respects, the Note remains in full force and effect and is hereby ratified, confirmed and approved in its entirety.

Executed under seal as of the first day of October, 2010.

INOFIN INCORPORATED

By: _____
Michael Joseph Cuomo, President and Treasurer

RAYMOND C. GREEN, INC.

By: _____
Raymond C. Green, President and Treasurer

## LOAN AGREEMENT

This Loan Agreement (the "Agreement") is made and entered into as of the 2nd day of May, 2008, by and between RAYMOND C. GREEN, INC. ("Lender") and INOFIN INCORPORATED ("Borrower").

In consideration of the covenants and agreements hereinafter set forth, Lender hereby agrees to loan to Borrower the sum of $7,000,000 (the "Loan") upon and subject to the representations, warranties, terms and conditions hereinafter set forth.

1. Amount and Terms of Loan.

(a) Upon the representations and warranties, and subject to the terms and conditions hereof, Lender agrees to make the Loan available to Borrower as a line of credit not to exceed $7,000,000 principal outstanding at any time in the aggregate (including principal outstanding under all of Lender's prior loans or advances to Borrower), repayable two years from the date hereof, subject to the conditions as set forth in the Note. Advances hereunder shall be used by Borrower solely for the purpose of funding the purchase, from car dealers ("Sellers"), including dealers who are affiliated (directly or indirectly by common ownership) with Borrower, of "Installment Contracts" (as hereinafter defined). Advances under the Loan shall be made once a week in the amount of not less than $50,000 or more than $150,000 each (subject to the aggregate $7,000,000 principal cap on all outstanding loans). Each such advance is secured by the collateral described in Section 2 hereof. Prior to each advance, Borrower shall deliver to Lender a schedule confirming that the income stream from the "Buyer's" (as hereinafter defined) principal payments under each Installment Contract will fully amortize the principal amount advanced by Lender with respect to such Installment Contract prior to the maturity date of the Note. In addition, upon each prepayment or repossession under an Installment Contract, Borrower shall provide Lender with an updated schedule in order that Lender may determine whether a prepayment by Borrower is due under the Note (as hereinafter defined). Amounts borrowed under the Loan shall bear interest and other charges as provided in, and shall be evidenced by, a note (the "Note") of Borrower of even date in such amount this day duly executed and delivered by Borrower to Lender.

(b) Borrower hereby covenants and agrees to satisfy all of the terms and conditions of the Note and to satisfy all of the terms, conditions and provisions of each and every other "Loan Document" (hereinafter defined), now or hereafter securing the Loan or which may be collateral for the Note.

2. Loan Documents. In consideration of, and to evidence and secure the Loan, Borrower has executed and delivered, or will execute and deliver prior to the first weekly advance, the following loan documents:

(a) This Agreement.

ID # 39285v07/6385-99

 (b) The Note.

 (c) Security Agreement, which was executed on April 17, 1996.

 (d) UCC-1 Financing Statements filed with Massachusetts Secretary of State (No. 383210 and No. 200647285910) and Rockland Town Clerk (No. 13200), as continued.

and prior to or simultaneously with each advance the following:

 (e) The Security Documents, as follows:

  (i) Original Retail Installment Sale Agreements (the "Installment Contracts" or singularly, an Installment Contract"), in the form of Exhibit 1 attached hereto with the original signature of the Buyer. The "Buyer" as described therein shall have made a down payment of not less than ten (10%) percent of the sale price of the vehicle described therein (the "Vehicle") and each transaction shall have Vendor's Single Interest Insurance ("VSI Coverage") and extended warranty coverage (if available), as described therein. Each Installment Contract shall be assigned by the "Seller" as defined therein to the Borrower, utilizing the "RECOURSE ASSIGNMENT" set forth on the reverse side thereof.

  (ii) Borrower's Original Partial Purchase And Assignment (the "Assignment") in the form of Exhibit 2 attached hereto. The "Amount Purchased" as set forth therein shall not exceed one hundred ten (110%) percent of the wholesale price of the Vehicle as listed in the most current NADA Price Book plus the premium for VSI Coverage and extended warranty coverage (if purchased). Lender shall not be obligated to make any one of the advances described in Section 1 (a) hereof unless (i) Borrower is then assigning, to Lender, or Lender already has an Assignment in which the aggregate "amount purchased" equals or exceeds the amount of such advance.

  (iii) Application For Title (the "Application") in the form of Exhibit 3 attached hereto or such form as is currently approved by the Registry of Motor Vehicles. Each such Application shall be completely filled in, including the insurance certification, and shall list the Borrower as the first lien holder.

  (iv) Allonge (the "Allonge") from Borrower to Lender in the form of Exhibit 4 attached hereto executed by the Borrower.

All of the documents in this Section 2 are called the "Loan Documents" and those in clauses (c), (d) and (e) are called the Security Documents.

 3. Representations and Warranties by Borrower. In order to induce Lender to make the Loan, the Borrower hereby makes the following representations and warranties to Lender:

-2-

ID # 39285v04/6385-99
5/2/08

(a) Borrower is a corporation duly organized and validly existing under the laws of the Commonwealth of Massachusetts and possesses all requisite power to own its assets and carry on its business as presently conducted.

(b) There are no suits, actions or proceedings pending or threatened against or affecting Borrower or against any of its properties or assets.

(c) Borrower has obtained and shall hereafter possess all such permits, franchises, registrations and licenses as are necessary to enable it to conduct its business.

(d) Borrower shall furnish Lender, from time to time, with such information as Lender may reasonably request and shall permit Lender, or any representative appointed by it, to examine Borrower's books and records including, without limitation, records pertaining to the Installment Contracts assigned to Lender and all payments made thereunder. Borrower shall provide Lender with monthly financial statements including balance sheet, profit and loss statement and statement showing the payments by all Buyers under Installment Contracts assigned to Lender. Borrower shall pay Lender $125.00 per week for visits by Lender, or its representative, up to a maximum of $500.00 per month (for all Loans).

(e) Borrower shall pay and discharge, before any lien arises and any penalty for non-payment is assessed, all lawful claims for taxes, assessments and governmental charges; provided however Borrower shall have the right to contest in good faith any of them if the priority of Lender's security interest is fully protected.

(f) Borrower shall keep all of its property (and the Vehicles which are the subject of the Installment Contracts) adequately insured, naming Lender as insured at all times with responsible insurance carriers against loss or damage by fire and other hazards and shall maintain public liability insurance on account of damage to persons and property, naming Lender as an additional insured.

(g) Borrower shall not create, or assume or have outstanding at any time any liens or encumbrances upon any of the security described in Section 2(e) hereof.

(h) Promptly upon receipt of the original title for each Vehicle from the Registry of Motor Vehicles, Borrower shall promptly deliver the title to Lender, to be held as security for the Loan.

(i) Borrower shall conduct its business in the ordinary course, as represented to Lender in writing and shall document all transactions in accordance with the typical loan file previously delivered to Lender and described on Exhibit 6 annexed hereto.

(j) All of the Security Documents and all of the underlying transactions with

-3-

respect thereto, comply, and shall in the future comply, with all applicable laws and regulations, including, without limitation, all consumer protection laws including M.G.L. ch. 93A and 140D.

4. **Release of Collateral.** Lender agrees, in the event Borrower is obligated to reassign to Seller any Installment Contract pursuant to the "Termination of Assignment" section of the Assignment, to return to Borrower the original Assignment, Installment Contract and Title to the Vehicle.

5. **Events of Default and Remedies.** In the event that Borrower shall be in material default (after all notice, grace and cure periods have expired, no cure having been effected) under any provision of the Loan Documents, Lender may, at its option, refuse to make any new advances under the Note and/or declare the Note and all other indebtedness of Borrower to Lender to be due and payable, whereupon the maturity of the then unpaid balance of the Note shall be accelerated and the same, together with all interest accrued thereon and all other charges thereunder, shall forthwith become due and payable without presentment, demand, protest or notice of any kind, all of which are hereby expressly waived, anything contained herein or in the Note or any other Loan Documents hereunder to the contrary notwithstanding.

6. **Remedies For Lender's Benefit Only.** The rights and powers conferred on Lender hereunder, and as assignee of Borrower or Seller under the Assignment or the Installment Contract, are solely to protect Lender's interest in the collateral and shall not impose any duty upon it to exercise any such powers. Lender shall be accountable only for the amounts that it actually receives as a result of the exercise of such powers or otherwise and neither Lender nor any of its officers, directors, employees or agents shall be responsible to Borrower or any Seller for any act or failure to act except for its gross negligence or willful misconduct or as otherwise provided by law. Without limiting any of the foregoing, Lender shall have no duty as to the collection or protection as to the rights secured by the Installment Contacts, or income thereon, nor as to the preservation of rights against any Buyer or any Vehicle financed through an Installment Contract. All rights and remedies of Lender with respect to the collateral shall be cumulative and may be exercised singularly, alternatively, successively or concurrently at such time or at such times as Lender deems expedient.

7. **Power Of Attorney.** Borrower hereby irrevocably constitutes and appoints Lender and any officer or agent thereof, with full power of substitution, as its true and lawful attorneys-in-fact with full irrevocable power, and authority in the place and stead of Borrower or in Lender's own name, for the purpose after the occurrence of a default: of carrying out the terms of this Agreement, to take any and all appropriate action and to execute any and all documents that may be necessary or desirable to accomplish this, granting to Lender, as attorney-in-fact of Borrower, full power of substitution and full power to do any and all things necessary to be done with this collateral as fully and effectually as Borrower might or could do but for this appointment, hereby ratifying all that said attorney-in-fact shall lawfully do or cause to be done by virtue hereof. This Power of Attorney is coupled with an interest and shall be irrevocable so

-4-

long as any part of the Loan shall remain unpaid.

8. Indemnification. Borrower hereby indemnifies and holds Lender harmless from and against any loss, damage, liability and expenses, including without limitation, attorneys' fees and expenses (a "Claim"), suffered or incurred by Lender with respect to any of the Security Documents assigned to Lender hereunder; including, without limitation, any and all claims brought by Buyers under the Installment Contracts or Sellers under the Assignments; provided, however that Lender's rights under this Section 8 are subject to and conditioned upon Lender giving to Borrower: (a) prompt notice of the assertion, threat or incurring of a Claim; and (b) copies of all pleadings, correspondence and other writings relating to a Claim promptly after the receipt or sending thereof. This indemnification obligation shall survive the payment in full of the Loan. Lender will not pay or settle any claim except in good faith.

9. Miscellaneous.

(a) In the event that the Lender shall retain or engage an attorney or attorneys to collect or enforce or protect its interests, with respect to any of the Loan Documents, Borrower shall be responsible to pay all reasonable costs and expenses of such collection, enforcement or protection (including reasonable attorneys' fees and court costs as applicable).

(b) At the closing, Borrower shall deliver the opinion of its counsel, with respect to the representations set forth in Section 3(a), (b), (c) and (j) hereof, in form acceptable to Lender's counsel.

(c) No modification or waiver of any provisions of the Loan Documents shall be effective unless signed in writing by all parties thereto.

(d) No officer, director, stockholder, employee or agent of Lender shall have any personal liability to Borrower hereunder.

(e) The Loan Documents shall be construed in accordance with, and be governed by, the laws of the Commonwealth of Massachusetts.

(f) Lender will honor and comply with the terms of each Installment Contract and shall not disturb Buyer's possessing of the Vehicle except as permitted by the Installment Contract.

(g) Lender agrees that if and to the extent that there is a difference between Borrower's rights under any "Partial Purchase and Assignment" and any "Recourse Assignment," the former shall control.

Executed under seal as of the date first above written.

-5-

RAYMOND C. GREEN, INC.

By: *[signature]*
Raymond C. Green, President

INOFIN INCORPORATED

By: *[signature]*
Michael J. Cuomo, President

-6-