UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

_____
                                )
In re:                         )
                                )
INOFIN INCORPORATED     )     CHAPTER 7
                                )     CASE NO. 11-11010-JNF
              Debtor.     )
_____)

**CHAPTER 7 TRUSTEE'S OBJECTION TO MOTION
BY RAYMOND C. GREEN, INC. FOR RELIEF FROM THE
AUTOMATIC STAY AND FOR RELATED RELIEF**

       Mark G. DeGiacomo, the duly-appointed Chapter 7 trustee of the above-captioned bankruptcy estate (the "Trustee") hereby registers his objection to the Motion by Raymond C. Green, Inc. for Relief from the Automatic Stay and for Related Relief (the "Motion for Relief").

       In support thereof the Trustee states as follows:

       1.      On February 9, 2011 (the "Petition Date") an involuntary Chapter 7 petition was filed against Inofin Incorporated (the "Debtor").

       2.      On February 16, 2011, this Court entered an Order for Relief.

       3.      On February 16, 2011, the Trustee was appointed as the Chapter 7 trustee of the bankruptcy estate of the Debtor.

       4.      The Debtor was engaged in the business of purchasing and servicing sub prime automobile loans (the "Sub-Prime Loans"). The Debtor would purchase the Sub-Prime Loans from the used car dealers with funds loaned to the Debtor by individuals or entities (the "Lenders").

       5.      As of the Petition Date there were over 200 Lenders who had outstanding balances which totaled approximately $70 million.

6.      The largest of the Lenders by far was Raymond C. Green, Inc. ("RCG").  RCG

appears to have loaned the Debtor substantial funds beginning as early as 1996 and it alleges that,

as of the Petition Date, the balance due on its then outstanding promissory notes was $8,176,661.40

plus attorneys' fees and costs.

7.      RCG is a Massachusetts corporation which, on information and belief, is owned and

controlled by Raymond C. Green ("Mr. Green").

8.      Although Mr. Green was not a director or an officer of the Debtor, he had a very

close personal and business relationship with the Debtor's principles, Michael Cuomo and Kevin

Mann, and Mr. Green was very involved with the operations of the Debtor.

9.      On February 22, 2011, this Court entered an Order authorizing the Trustee to operate

the Debtor's business for the period of ninety days.

10.     The Trustee continues to operate the Debtor's business for the purpose of preserving

the value of the portfolio of approximately 2,840 loans being held and serviced by the Debtor with a

total face value of approximately $19 million (the "Loan Portfolio").

11.     The Trustee has solicited offers for the purchase of the Loan Portfolio and several

interested parties are presently conducting due diligence on the Loan Portfolio.

12.     On March 9, 2011, RCG filed its Motion for Relief pursuant to which he seeks an

Order requiring the turnover to it of approximately 1,731 consumer loans in the Loan Portfolio (the

"Alleged Green Loans") pursuant to two alternative theories.

13.     RCG's first theory is that prior to the Petition Date it properly foreclosed on its

security interest in the Alleged Green Loans and therefore, as of the Petition Date, those loans were

not property of the bankruptcy estate.  The second theory is that even if the foreclosure sale had not

occurred, or had not properly been accomplished, RCG holds a validly perfected security interest in

the Alleged Green Loans and since these loans are being liquidated and can not be replaced by a

lien on new loans, the Trustee is not able to provide adequate protection to RCG and therefore relief

from the automatic stay should be granted.

14.     The Alleged Green Loans represent approximately 61 % of the Loan Portfolio and

because they are generally the "best loans" in the Loan Portfolio they represent approximately 74%

of the collections the Trustee has received on the Loan Portfolio as a whole.

## The Alleged Security Interest

15.     RCG argues that pursuant to its security agreement dated April 17, 1996 (the

"Security Agreement") it perfected its security interest in the Alleged Green Notes in two ways: (a)

by recording a UCC-1 at the Office of the Secretary of State for the Commonwealth of

Massachusetts; and (b) by taking physical possession of the original Alleged Green Loans

documents.

16.     However, pursuant to the terms of the Security Agreement, the Debtor granted RCG

a security interest only "in and to chattel paper, instruments and all motor vehicle installment sales

contracts *purchased by the Debtor with proceeds of loans from secured party* and assigned and

delivered to secured party" (emphasis added)

17.     Based on information obtained by the Trustee from the Debtor's employees as well

as the books and records of the Debtor, it appears that when RCG made a loan to the Debtor, the

consumer loans which were provided to RCG as alleged collateral were loans that had been

purchased by the Debtor prior to the RCG loan and therefore were not purchased "with the proceeds

of the loans from the secured party".

18.    As a result, since the original consumer loans which were delivered to RCG by the

Debtor were not paid for from the proceeds of RCG's loans, RCG does not have a valid perfected

security interest in the Alleged Green Loans under either of its theories.

## The Alleged Foreclosure

19.    Obviously, if RCG did not have a valid secured claim in the Alleged Green Loans,

he could not foreclose on them.

20.    Even if RCG did have a valid security interest in the Alleged Green Loans the

information provided in the Motion for Relief concerning the alleged foreclosure sale did not

provide sufficient detail for this Court to determine whether the foreclosure sale was properly

conducted pursuant to M.G.L. c. 106, §9-617.[1]

21.    Given the timing of the alleged foreclosures (22 days and 14 days prior to the filing

of the involuntary petition) and Mr. Green's very close relationship with the two principles of the

Debtor there is a substantial question as to whether RCG should be viewed as a bad faith purchaser

and the foreclosure should be voided.

22.    Once all the circumstances concerning the foreclosure sale are determined (assuming

again that RCG had a valid security interest) the foreclosure sale may also be avoidable as a

preferential transfer.

23.    Finally, given the involvement of Mr. Green with the Debtor, including his

involvement with the Debtor's improper use of loan proceeds for the purchase of real estate, the

Trustee is in the process of preparing an adversary complaint seeking the equitable subordination of

any claim which RCG may have against the bankruptcy estate.

---

[1] The only information contained in the Motion for Relief about the alleged foreclosure sale was that there were two of
them and RCG was the high bidder (See paragraph 11 of the Motion for Relief.

24.     Given the above, the Trustee believes that an evidentiary hearing is necessary to determine (1) if RCG had a valid security interest in any of the Alleged Green Loans; (2) if RCG did have a valid security interest in the Alleged Green Loans, whether the foreclosure sale was conducted properly under Massachusetts law and/or is avoidable as a preferential transfer and (3) if RCG holds a claim, whether that claim should be equitably subordinated to the claims of general unsecured creditors[2].

In accordance with the requirements of MLBR 4001-1(c), the Trustee responds to the allegations contained in the Motion for Relief as follows:

1.     Admitted.

2.     Admitted.

3.     The Trustee denies that RCG's funds were used to buy consumer loans from dealers. By way of further response, the Trustee says that it is not clear as to whether some of RCG's funds were also used by the Debtor for the improper purpose of loaning money to entities owned and controlled by the Debtor's principles for the purpose of allowing those entities to purchase real estate.  The Trustee admits that the Security Agreement attached as Exhibit A to the Motion for Relief was signed on behalf of the Debtor.  The Trustee denies the allegation that the Security Agreement enabled RCG to perfect its lien on the RCG portfolio.

4.     The Trustee admits that the First 2008 Note was executed on behalf of the Debtor and that a copy of the First 2008 Note is attached as Exhibit B to the Motion for Relief.  The Trustee denies the allegation that all of the proceeds from the First 2008 Note were used by the Debtor to make loans to consumer borrowers and he denies that any original documents delivered to RCG were documents that were purchased from the proceeds of the First 2008 Note.

5.     The Trustee admits that the 2008 Loan Agreement was executed on behalf of the Debtor and he admits that the Second 2008 Note was executed on behalf of the Debtor.  The Trustee also admits that copies of the 2008 Loan Agreement and the Second 2008 Note are attached to the Motion for Relief.  The Trustee says that the 2008 Loan Agreement speaks for itself and he denies the allegation that the original instruments delivered to RCG were purchased with proceeds from the Second 2008 Note.

---

[2] As mentioned earlier, the Trustee is in the process of drafting an adversary complaint which will seek the entry of a judgment equitably subordinating any claim RCG may have.

6. The Trustee admits that the 2009 Loan Agreement was executed on behalf of the Debtor and he admits that the Second 2009 Note was executed on behalf of the Debtor. The Trustee also admits that copies of the 2009 Loan Agreement and the Second 2009 Note are attached to the Motion for Relief. The Trustee says that the 2009 Loan Agreement speaks for itself and he denies the allegation that the original instruments delivered to RCG were purchased with proceeds from the Second 2009 Note.

7. The Trustee admits that the 2010 Note was executed on behalf of the Debtor and that a copy of the 2010 Note is attached to the Motion for Relief. The Trustee denies the allegation that the original instruments delivered to RCG were purchased with the proceeds of the 2010 Note.

8. The Trustee admits that Debtor and RCG entered into the 2010 Loan Modification and that a copy of the 2010 Loan Modification is attached to the Motion for Relief. The Trustee is without sufficient knowledge or information to respond to the allegation that the 2010 Loan Modification was entered into "as a result of an investigation into the Debtor's conduct by the U.S. Securities and Exchange Commission". By way of further answering the Trustee says that the 2010 Loan Modification speaks for itself.

9. The Trustee is without sufficient knowledge or information to admit or deny the allegations contained in Paragraph 9 of the Motion for Relief.

10. The Trustee is without sufficient knowledge or information to admit or deny the allegations contained in Paragraph 10 of the Motion for Relief.

11. The Trustee is without sufficient knowledge or information to admit or deny the allegations contained in Paragraph 11 of the Motion for Relief and to the extent that said allegations contain conclusions of law no response is required.

12. The Trustee is without sufficient knowledge or information to admit or deny the allegations contained in Paragraph 12 of the Motion for Relief.

13. The Trustee is without sufficient knowledge or information to admit or deny the allegations contained in Paragraph 13 of the Motion for Relief and to the extent that said allegations constitute conclusions of law no response is required.

14. The Trustee admits that the contents of Paragraph 14 of the Motion for Relief accurately reflect the Sections of the Bankruptcy Code indicated.

15. The Trustee denies all allegations contained in Paragraph 15 of the Motion for Relief.

16. Denied.

17. Denied.

18.     The Trustee admits that he is not generating new loans in connection with the operation of the Debtor's business but he denies the allegation that he can not provide adequate protection to secured creditors.

19.     The Trustee admits that because this is a Chapter 7 case "there is no prospect for an effective reorganization". The Trustee denies the allegation that as a result of this fact RCG is entitled to relief from the automatic stay.

20.     Admitted.

21.     The Trustee admits that the Debtor's bankruptcy is a Chapter 7 liquidation and that no reorganization is possible. However the Trustee denies the allegation that as a result RCG is entitled to relief from the automatic stay.

WHEREFORE, the Trustee requests that this Court enter an Order either denying the

Motion for Relief or scheduling an evidentiary hearing concerning the Motion for Relief and this

Opposition.

Respectfully submitted,

MARK G. DEGIACOMO, CHAPTER 7 TRUSTEE
OF THE ESTATE OF INOFIN INCORPORATED

By his attorney


 /s/ Ryan M. MacDonald
Mark G. DeGiacomo, Esq. BBO #118170
Ryan M. MacDonald, Esq. BBO #654688
Murtha Cullina LLP
99 High Street
Boston, MA  02110
617-457-4000 Telephone
617-482-3868 Facsimile
mdegiacomo@murthalaw.com
Dated: March 23, 2011          rmacdonald@murthalaw.com

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) |
| INOFIN INCORPORATED | )    CHAPTER 7 |
| | )    CASE NO. 11-11010-JNF |
| Debtor. | ) |
| | ) |

### CERTIFICATE OF SERVICE

I, Ryan M. MacDonald, hereby certify that on the 23rd day of March, 2011, I served a copy of the ***Chapter 7 Trustee's Objection to Motion by Raymond C. Green, Inc. for Relief From the Automatic Stay and for Related Relief*** via first-class mail, postage prepaid or by electronic mail upon the parties listed on the attached Service List.

/s/ Ryan MacDonald
Ryan M. MacDonald, Esq., BBO #654688
Murtha Cullina LLP
99 High Street
Boston, MA  02110
617-457-4000 Telephone
617-482-3868 Facsimile
Dated: March 23, 2011                    rmacdonald@murthalaw.com

John Fitzgerald, Asst. U.S. Trustee*
J.W. McCormack Post Office &
Courthouse
5 Post Office Sq., 10th Fl, Suite 1000
Boston, MA  02109

Michael Lushan, Esq.*
Lushan, McCarthy & Goonan
496 Harvard Street
Brookline, MA 02446

Donald Ethan Jeffery*
Murphy & King PC
One Beacon Street, 21st Floor
Boston, MA 02108

Lynn McIsaac
17 Nixon Avenue
Plymouth, MA 02360

Inofin Incorporated
55 Accord Park Drive, Unit D
Rockland, MA 02370

Douglas K. Clarke, Esq.*
Alexander G. Rheaume, Esq.*
Macken Toussaint, Esq.*
Riemer & Braunstein, LLP
Three Center Plaza
Boston, MA 02108

Stewart F. Grossman, Esq.
Attorney for Richard Sgarzi
Looney & Grossman LLP
101 Arch Street
Boston, MA 02110

David Holway
35 Linden Drive
Cohasset, MA 02025

Michael J. Goldberg, Esq.*
John T. Morrier, Esq.*
Casner & Edwards, LLP
303 Congress Street
Boston, MA 02210

Gilbert B. Weisman, Esq.
Becket & Lee LLP
P.O. Box 3001
Malvern, PA 19355-0701

IKON Office Solutions
Recovery & Bankruptcy Group
3920 Arkwright Rd., Suite 400
Macon, GA 31210

**\*served by electronic transmission**