UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~

In re
**INOFIN INCORPORATED,**                          Chapter 7
    Debtor                                    Case No. 11-11010-JNF

~~~~~~~~~~~~~~~~~~~~~~~~

MEMORANDUM

**I. BACKGROUND**

On August 30, 2011, the Chapter 7 Trustee filed a Motion for Authority to Pay Pre-Petition Lenders Single Interest Insurance Premiums (the "Motion") pursuant to which he specifically sought authority to pay V.S.I. Insurance Agency, Inc. ("VSI") the amount of $42,479, which represents the aggregate amount of unpaid, pre-petition insurance premiums due under a 2010 Lenders Single Interest Insurance Policy ("LSIIP") between Inofin Incorporated ("Inofin" or the "Debtor") and Castletown Insurance Company Limited, ("Castletown"), an insurance company incorporated in the Isle of Man.

On October 6, 2011, the Court heard the Trustee's Motion and the Opposition filed

1

by Frederick Means, d/b/a Means Auto, a dealer who sold automobiles to consumers which were financed by Inofin, and Source One Financial Corporation as the partial assignee of Means Auto (together, the "Opposition Parties"). At the hearing, counsel to the Trustee and the Opposition Parties addressed whether the Trustee's Motion was a settlement agreement that should be evaluated using the standards applicable to motions to compromise controversies under Fed. R. Bankr. P. 9019. At the conclusion of the hearing, the Court afforded the parties an opportunity to submit further materials and briefs in support of their respective arguments.

The material facts necessary to resolve the controversy are not in dispute. Resolution of the matter requires consideration of whether the Trustee sustained his burden of establishing that the payment of the unpaid, prepetition LSIIP premiums provides more benefit to the bankruptcy estate than a decision not to pay the premium and potentially engage in litigation with Castletown and VSI to recover security deposits paid in conjunction with installment contracts executed by consumers and commissions due under the Policy.

The Court takes judicial notice of its Claims Register in this case. Three hundred seventy-seven proofs of claim have been filed in this Chapter 7 case. The Opposition Parties did not file proofs of claim and the deadline to do so has passed.

**II. THE LSIIP**

The 2010 LSIIP consists of five distinct coverages: "Collateral Physical Damage;" "Conversion and Confiscation;" "Skip Coverage;" "Security Interest Non-Filing;"

and "Repossession Coverage." The Declaration page of the policy defines the "Insured" under the LSIIP as Inofin. The provisions of the Collateral Physical Damage Coverage are the most extensive. In Section II - Definitions, at paragraph 6, "Insured" is defined as "the entity designated as the Names Insured [sic] in the declarations, or any Additional Insured designated by Endorsement to this Policy." No Additional Insureds are designated by Endorsement to the Policy. Moreover, paragraph 16 of Section VIII provides:

> Nothing in this Policy shall give any rights to any person other than the Insured. Any extension providing indemnity to any person other than the Insured shall not give any rights of claim to such person the intention being that the Insured shall claim on behalf of such person. The receipt of the Insured shall in every case be a full discharge to the Insurer.

In Section III - - Conditions Precedent, the Policy provides:

> The Company shall not be obligated to make any payments under the policy unless all conditions set forth in this policy have been fulfilled, and unless each of the following have occurred . . . [b]oth the property damage and repossession occur during the policy period; and . . . [n]otice of the loss has been given to the company not later than ninety (90) days after the date of repossession.

An additional condition precedent is that "Reinsurance cover [sic] is in place and in respect of any liability under this policy that such reinsurance shall have first become liable to pay and shall have in fact have paid their proportion of any such loss or expense before any payment shall be made by Castletown . . . ."

In Section VII - Duties in the Event of Loss, the Insured is required to "[g]ive prompt notice of loss to us or our agent, but not later than ninety (90) days after repossession." In Section VIII, in addition to the provision noted above at paragraph 16, the LSIIP provides

3

at paragraph 18 that "[t]o the maximum extent permitted, the validity, interpretation, enforcement, and effect of this Coverage shall be governed by the laws of the Isle of Man."

The declaration page and an Addendum to the LSIIP establish a Policy limit of $600,000, and reference Reinsurance coverage as part of the Policy, although neither the reinsurer nor the limits of the excess coverage is disclosed. The Addendum also provides that the Insured is entitled to a Profit Commission, under a formula that includes the following provision: "[t]he debit balance, if any, from the profit commission statement of the prior years shall be carried forward to extinction." Issued on March 8, 2010, and relating back to January 1, 2010, Castletown agreed to provide "Lender Single Interest" coverage, in the above-detailed five coverages, at an annual premium of $244, although in July of 2010, the LSIIP was amended to provide for a premium of $397 per contract per annum. As noted above, the LSIIP is an "occurrences" policy, covering events arising during the policy period which ended on December 31, 2010.

### III. THE ORIGINAL MOTION AND LIMITED OBJECTION

By way of background, the Trustee explained that "[t]he Debtor primarily was engaged in the business of used motor vehicle sales finance, specializing in indirect lending for sub-prime auto loans" and that "[a]s an auto sales finance company, it underwrote the lending activities of used car dealerships by purchasing the Installment Contracts entered into between the dealer and its sub-prime borrowers." The Trustee added that "[i]n addition to purchasing the rights under the Installment Contracts the Debtor was also listed as the first lienholder on the certificate of title for the underlying vehicles;" that "[i]n

4

connection with its business the Debtor annually purchased Lenders Single Interest Insurance from Castletown to cover certain losses[1] the Debtor might sustain to its motor vehicle collateral that secured the Installment Contracts it purchased from dealers."

The Trustee stated that the Debtor purchased through VSI a LSIIP for the year commencing January 1, 2010 through December 31, 2010 and agreed to pay a premium of $379 per Installment Contract purchased by the Debtor, the amount of which was paid on a monthly basis to Castletown through VSI.[2] The premium amount was typically included in the purchase price that the consumer financed in connection with the purchase of the motor vehicle. Built into the $379 premium was a $60 security deposit which was held by Castletown. The security deposit was refundable upon payment of all policy premiums for installment contracts purchased during the policy year and the delivery of a certification that there were no further claims against Castletown that might be covered under the policy. In other words, the Trustee could not recover the security deposits without both paying the unpaid premiums for November and December of 2010 and certifying that there were no further claims.

According to the Trustee, between January 2010 and October of 2010, the Debtor acquired 1,520 installment contracts and paid VSI the premium amounts. In November and December of 2010, the Debtor acquired an additional 107 contracts but did not forward

---

[1] As noted above the five coverages included insured losses for (i) damage; (ii) conversion; (iii) confiscation; (iv) repossession; and (v) errors in security interest filings.

[2] Notably, the consumers' contracts generally had three year terms, while the insurance obtained through VSI was for one year.

the required premium amounts to VSI, which premiums totaled $42,479. Additionally, the Trustee stated that the Debtor has claims against the LSIIP for the November and December contracts totaling $31,659.26.  According to the Trustee, once he pays the premiums, he can recover the security deposits for all the contracts.[3]  The Trustee justified his proposed payment by stating that it would cure any potential consumer finance compliance issues with the November and December 2010 installment contracts and enable him to recover the security deposits and the amount due on the claims.

The Opposition Parties initially filed a Limited Objection to the Trustee's Motion to which they attached the LSIIP for 2010.  They objected on the grounds that the Trustee proposed to certify that no further claims existed under the LSIIP and "because the Trustee purports to terminate rights that belong in whole or in part" to them.  The Opposition Parties contended that they possess $301,292.66 worth of unreimbursed claims under the 2010 policy.  They stated:

> This is a matter of vital interest to the Dealer, who faces chargeback — which it will strenuously contest — for "front end" payments on any defaulted Installment Sales Contracts (as defined below) that it sold to Inofin. The Opposition Parties jointly face prejudice with respect to the insured back end payments, where the VSI event occurred late in the life of the Installment Sale Contract. Furthermore, by its own terms, the 2010 Policy contains a profit-commissions sharing provision that may be forfeited by operation of the proposed agreement with Castletown. Finally, to the extent that the certification provided by the Trustee may be understood as releasing Castletown from any other potential legal or equitable claims arising out of the 2010 Policy but which have not yet been discovered, such certification

---

[3] Although the Court's arithmetic differs from that of the Trustee, for the payment of $42,479, the Trustee will receive $86,800.26 (1,520 + 107 x $60 +$31,659.26 - $42,479).

6

>may be highly prejudicial to the Trustee and Opposition Parties and is therefore inappropriate. For these reasons the Insurance Motion must be denied in part.

While the Opposition Parties recognized that the claims may be uncollectible if Castletown were successful in establishing that they are time-barred, they assert that "[t]he 2010 Policy insures each Dealer with respect to any claims that its Back End Payments are pledged against Front End Payments sold by the Dealer to Inofin." They also objected because of the release by the Trustee of Castletown "from commissions profit-sharing obligations ostensibly owing under the 2010 Policy."

## IV. THE SUPPLEMENTAL AND GENERAL OBJECTION AND THE TRUSTEE'S RESPONSE

Following the October 6, 2011 hearing, with leave of Court, the Opposition Parties submitted a Supplemental and General Objection to the Trustee's Motion, together with the LSIIP for 2010, as well as endorsements, an addendum, and a copy of a Seller Agreement. In their Supplemental and General Objection, the Opposition Parties addressed the standard for approval of compromises under Fed. R. Bankr. P. 9019.

The Opposition Parties highlighted gross irregularities in the LSIIP by pointing to, *inter alia*, a significant increase in the cost of coverage from $244 per year to $397 per year resulting from a Policy amendment in July 2010. They questioned the Trustee's decision to pay $42,479 in view of that irregularity. They also maintained that the Trustee's cost of $4,399.74 to net a twenty to one recovery is untenable, even though Castletown, which is incorporated in the Isle of Man, is likely beyond the ordinary processes of this or any

American court.

The Opposition Parties further maintained that there is no need to pay anything for the privilege of recovering $91,200 relating to the security deposits and that, in view of the $600,000 policy limit, it is unclear how much coverage remains in excess of the Opposition Parties claims of $301,292.66. Although the Opposition Parties recognized that the Policy is an "occurrences" policy with a 90-day notification period, they asserted that "the Massachusetts rule allows the insurer to attempt to sustain the burden of proving prejudice from the delay in order to defend against the late-noticed claim."[4] The Opposition Parties also observed that the settlement fails to address claims under the Profit Commission clause, which may include carry-forwards from previous years. They criticized the Trustee for likely waiving potentially valuable claims against the unidentified reinsurer because releasing claims against the first-tier insurer releases reinsurers.[5] The Opposition Parties

---

[4] They cited Johnson Controls, Inc. v. Bowes, 381 Mass. 278, 282 (1980) ("[W]e are of the opinion that our prior decisions relative to the delayed notice of an accident and the delayed notice of the institution of a suit have been too restrictive and should be changed. Accordingly, we hold that where an insurance company attempts to be relieved of its obligations under a liability insurance policy not covered by G.L. c. 175, § 112, on the ground of untimely notice, the insurance company will be required to prove both that the notice provision was in fact breached and that the breach resulted in prejudice to its position.").

[5] In Paragraph 6 of Section III of the Policy, however provides the following:

"Pay as paid" - It is a condition precedent to this insurance that Reinsurance cover [sic] s in place and in respect of any liability under this policy that such reinsurance shall have first become liable to pay and shall have in fact have paid their proportion of any such loss or expense before any payment shall be made by Castletown Insurance Company hereon.

8

also disapproved of the release of Castletown because it will likely release its agent, VSI, "who apparently took a fee for arranging this "Policy." They concluded that the Johnson Controls doctrine, coupled with the other insured-friendly principles frequently applicable, as well as the time-extenders of Bankruptcy Code Section 108, among other things, suggest that releasing Castletown, or certifying "'no claims' exist, is below the lowest level of reasonableness."

The Opposition Parties, in the alternative, sought deferral of consideration of the Trustee's Motion, particularly as there is no exigency in consummating the arrangement with Castletown. The Opposition Parties also maintained they have a direct economic stake in the disposition of the Policy and thus have standing to object.

Additionally, the Opposition Parties suggested that Inofin, and by extension the Trustee, did not reserve the right to release or impair collateral, and may not, without consent of the dealers, terminate VSI coverage. They added that "in an evidentiary hearing on this matter, the evidence would show that, where Inofin or any other purchaser of Massachusetts subprime retail automobile installment sales contracts elects to put the contract back to the dealer, the lender delivers the original loan package, including the 'wet' note, title and the right to recover the VSI to the dealer." It concluded "that (a) that the dealers have standing to object to impairment of VSI insurance; and (b) that the Trustee is obligated to preserve insurance to the greatest extent possible, which, of course, is contrary to what he is doing in this matter."

The Trustee in Response to the Supplemental and General Objection stated:

9

    The Trustee learned that prior to the Petition Date, Kevin Mann, the CEO of the Debtor, by letter dated February 3, 2011, represented to Castletown that there were no further claims under the 2010 Policy and he, on behalf of the Debtor, released Castletown and its reinsurers from any further liability under the 2010 Policy (the "Pre-Petition Release").

***

    It is the Trustee's understanding based his review of the Debtor's records and his discussions with representatives from Castletown, the VSI Agency and the employees of the Debtor that the delivery of the Pre-Petition Release was not unusual. . . . In addition the Trustee discovered that it was the Debtor's practice to deliver a release of liability to Castletown and its reinsurers at the end of each policy year in order to obtain a return of the security deposits Castletown was holding from premium payments made under the prior year's policy.

In addition to those representations, the Trustee stated that when he advanced a claim under the LSIIP, he was advised by Castletown and VSI that the prepetition release executed by Inofin prohibited him from making any claims and compelled him to conclude that "the coverage under the 2010 Policy was terminated and no further claims could be made under the 2010 Policy." The Trustee added that when he demanded the security deposits from Castletown and VSI they indicated that they would turnover the deposits on condition that he pay outstanding premiums and execute a release letter.

In sum, the Trustee pointed to 1) the prepetition release executed by Kevin Mann on behalf of the Debtor and the limited effect of the release he proposed to execute; 2) the terms of the LSIIP which bar him from making claims under it because it is a "claims made" policy and the reporting period has expired;[6] and 3) the risks of litigation against

---

[6] Specifically, the Trustee stated:

10

Castletown owing to the choice of law provision in the LSIIP. The Trustee observed that the Isle of Man maintains an independent legal system separate from that of the United Kingdom known as Manx customary laws. According to the Trustee, litigation would not be in the best interest of the bankruptcy estate due to difficulties with collection and potentially high costs due to, among other things, the potential complexities of initiating coverage litigation against Castletown on the Isle of Man.

## V. DISCUSSION

A. Applicable Law

In In re Wolverine, Proctor & Schwartz, LLC, 436 B.R. 253 (D. Mass. 2010), the court set forth the law applicable to the determination of whether a compromise should be approved. It stated:

> In deciding whether to accept a settlement agreement that discharges legal claims held by the debtor, a bankruptcy court should consider the following factors:
>
> > (i) the probability of success in the litigation being compromised; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and, (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premise.

---

Based on the quoted language above [Section II, Conditions Precedent], the 2010 Policy clearly is a "claims made" policy with a 90 day extended reporting period from end of the Policy Period (December 31, 2010) for any claims that arise during the Policy Period. To the extent that the 90-day notification period is deemed to extend the reporting period, this extended reporting period would have terminated on March 31, 2011 but would have been further extended under 11 U.S.C. § 108(b) to April 14, 2011.

11

> [In re] High Voltage [Eng'g Corp.], 403 B.R. [163] at 167 [D. Mass. 2009)](quoting Jeffrey [v. Desmond], 70 F.3d [183]at 185 [1st Cir. 1995)]). Other factors may also include the experience and competence of the trustee and public policy considerations. Id.
>
> As noted by the First Circuit, in reviewing a settlement agreement for approval purposes, "[t]he [bankruptcy] judge . . . is not to substitute her judgment for that of the trustee, and the trustee's judgment is to be accorded some deference." In re Healthco [Int'l, Inc.], 136 F.3d [45]at 50 n. 5 [1st Cir. 1998)](quoting Hill v. Burdick (In re Moorhead Corp.), 208 B.R. 87, 89 (1st Cir. BAP 1997)); In re 110 Beaver St. P'ship, No. 08–2408, 2009 WL 4874783, at *4 (1st Cir. Dec.17, 2009) ("the trustee is accorded a significant range of discretion in the prudent exercise of business judgment."). Instead, the task of the court is to determine whether the settlement meets at least the "lowest point in the range of reasonableness." In re Healthco, 136 F.3d at 51 (quoting Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir.1983)).

In re Wolverine, Proctor & Schwartz, LLC, 436 B.R. at 265-66.

    B. <u>Analysis</u>

The Court finds, based upon the submissions of the parties, that the Trustee has more than satisfied his burden of establishing that the payment of the November and December premiums would provide a significant benefit to the bankruptcy estate. In addition, because the Opposition Parties have not filed proofs of claim, they lack standing to challenge the Trustee's business judgment.

The Trustee unequivocally established that there are likely to be significant difficulties encountered in the matter of collection, absent payment of the unpaid, prepetition insurance premiums, in view of the LSIIP provisions and the release executed by Kevin Mann on behalf of Inofin. Additionally, he unequivocally established that the complexity of the litigation involved, and the expense, inconvenience and delay attending

12

it, weigh heavily against pursuing claims against Castletown because of the Policy provision making the applicable law for the interpretation, enforcement and effect of coverage the Isle of Man. The Court finds that the Opposition Parties' reliance on Massachusetts case law is not compelling. Because of the choice of law provision in the policy, Massachusetts law does not apply. Finally, the Court observes that the only parties to object to the Motion have not filed timely proofs of claim. Thus, the Court infers from the absence of objections from creditors who have filed proofs of claims that they do not share the views espoused by the Opposition Parties.

This Court concludes that the Opposition Parties have advanced no arguments that would permit this Court to conclude that the Trustee's position is unreasonable, let alone below the "lowest point in the range of reasonableness." His payment of the November and December premiums will yield a sizeable sum that will benefit the bankruptcy estate. His Motion is well-supported and reasonable.

## VI. CONCLUSION

In view of the foregoing, the Court shall enter an order granting the Trustee's Motion for Authority to Pay Pre-Petiton Lenders Single Interest Insurance Premiums.

By the Court,

*Joan N. Feeney*

Joan N. Feeney
Dated: October 31, 2011          United States Bankruptcy Judge

13

14